2009 VT 4

**Gary Nichols and Carol Ann Nichols, Individually and as Parents and Guardians of Gregory Nichols v. Brattleboro Retreat d/b/a Retreat Healthcare**

[970 A.2d 1249]

No. 07-310

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed January 23, 2009

Motion for Reargument Denied February 12, 2009

*Michael F. Hanley* and *Paul J. Perkins* of *Plante & Hanley, P.C.*, White River Junction, for Plaintiffs-Appellants.

*Ritchie E. Berger* and *Jon Jeffrey Tyzbir* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Plaintiffs in this medical negligence action appeal from a judgment, based on a jury verdict, in favor of defendant, the Brattleboro Retreat. Plaintiffs contend the court erred in: (1) admitting the deposition testimony of an expert witness without finding that the witness was unavailable; and (2) denying a motion for mistrial or new trial based on defense counsel's alleged misconduct. We conclude that the admission of the deposition testimony was error, and reverse and remand. In light of this conclusion, we do not consider the claimed error based on counsel's alleged misconduct.

¶ 2. The facts underlying this appeal may be briefly summarized. Additional information pertinent to the specific issues will be set forth in the ensuing discussion. In the fall of 2003, plaintiffs' son, who has a long history of mental illness, was a patient at the Brattleboro Retreat. On the day in question, he became highly

agitated, swore at Retreat staff, and kicked several pieces of furniture. Staff accompanied him to a "quiet room" and left him alone inside, where he continued to yell and kick. Staff eventually called the Brattleboro Police Department. When the responding officers were unable to calm plaintiffs' son, they threatened him with a TASER and ultimately used it to subdue him. Staff then injected him with Haldol, and he lost consciousness.

¶ 3. Plaintiffs later filed this action against the Retreat, alleging medical negligence and lack of informed consent. Following a three-day trial in June 2007, the jury returned a verdict in favor of the Retreat. The court denied a subsequent motion for new trial. This appeal followed.

¶ 4. Plaintiffs first contend that the trial court erred in admitting the videotaped deposition of the Retreat's expert witness, Dr. Rabinowitz, without finding that the witness was unavailable. The facts underlying the claim may be summarized as follows. The Retreat had identified Dr. Rabinowitz, a psychiatrist at Fletcher Allen Health Center, as its sole expert witness. Plaintiffs deposed him in March 2007. Although the Retreat's attorney requested that trial be scheduled for the week of June 25, 2007, the court notified the parties that trial would commence one week earlier, beginning June 19, 2007. The Retreat's attorney then informed plaintiffs' counsel that Dr. Rabinowitz was unavailable during the week of June 19, and requested that counsel choose a convenient date to depose the witness and "videotape his testimony for preservation and trial." In a series of email responses, plaintiffs' counsel inquired as to the reasons for the witness's unavailability and offered to allow him to testify out of order, but did not expressly agree to the admission of the videotaped testimony. Ultimately, the Retreat's attorney issued a formal notice of deposition of Dr. Rabinowitz to be "recorded stenographically and by video tape for use at trial." During his initial examination of the witness, counsel for the Retreat explained that the deposition testimony was being taken specifically "to present to the jury" at trial, and the witness explained the reason for his unavailability during the week scheduled for trial.[1] Plaintiffs' counsel appeared at the deposition and cross-examined the witness.

---

[1] The dissent contends that the admission of the deposition was proper in part because it "was . . . noticed and conducted as a 'preservation' deposition." *Post*, ¶ 17. No such distinct type of deposition is described, or even mentioned, in our rules, however.

¶ 5. Plaintiffs objected to the admission of the videotaped deposition at trial, however, arguing that the Retreat had not shown that the witness was unavailable. The court found that both parties had clearly understood that the second deposition of Dr. Rabinowitz was "a preservation deposition, recorded for purposes of admission at trial" and that plaintiffs had not objected to the proposed use at the time of the deposition. In addition, the court observed that it was appropriate "to consider . . . [any] prejudice to the plaintiff[s] in the use of [the] deposition," and found in this regard that plaintiffs had been "able to cross-examine the doctor to their satisfaction." For these reasons, the court ruled that the deposition was admissible.

■ ■ ¶ 6. The preference for live, in-court testimony is well settled in our jurisprudence. Criminal defendants enjoy a constitutional right "to be confronted with the witnesses" against them. U.S. Const. amend. VI; Vt. Const., ch. I, art. 10. Civil litigants are accorded a similar right under Rule 43(a) of the Vermont Rules of Civil Procedure, which provides broadly that "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules." Exceptions to the general rule are also well recognized. One is set forth in Rule 32(a)(3)(E), which provides that the deposition of a witness may be admissible at trial if the court finds that the witness "is absent from the hearing and the proponent of the deposition has been unable to procure the witness' attendance by process or other reasonable means." As we have observed, "deposition testimony can be taken and used at trial if the witnesses are unavailable." *Int'l Collection Serv., Inc. v. Gibbs*, 147 Vt. 105, 107, 510 A.2d 1325, 1327 (1986).

¶ 7. Although the Retreat relied on the exception for "absent" witnesses in seeking admission of Dr. Rabinowitz's deposition, the trial court did not make the requisite finding that the witness was unavailable as a basis for admission. Instead, the court essentially found that plaintiffs had waived the objection by failing to raise it at the deposition despite plaintiffs' clear understanding that the sole purpose of the deposition was to preserve testimony for trial. Plaintiffs challenge this ruling.

■ ¶ 8. We agree with plaintiffs that the facts and the law do not support the court's finding of a waiver. There is no question, to be sure, that plaintiffs were aware of the stated purpose of the deposition and extensively examined the witness with this under-

standing. Nevertheless, plaintiffs expressly denied having entered into any stipulations at the start of the deposition, and, more importantly, were under no affirmative obligation to raise an objection at that time; it remained defendant's burden, as the proponent, to establish a foundation for the deposition's admission at trial. See *Duto v. Mitchell*, 158 Vt. 653, 654, 609 A.2d 988, 989 (1992) (mem.) (although plaintiffs had informed defendant of their intent to introduce deposition at trial and defendant did not object, defendant "never agreed affirmatively to waive its right to require the in-court appearance" of the witness, and defendant's silence did not amount to acquiescence). Hence, we cannot conclude that the record supports a finding that plaintiffs waived their objection to the deposition or implicitly agreed to its admission. Moreover, there was no finding that the witness actually was unavailable. Accordingly, it was error to admit the deposition.

¶ 9. Our conclusion in this regard does not end the matter, however, for error in the admission of evidence will not undermine a verdict absent a showing that it resulted in prejudice to the substantial rights of a party. See *Boehm v. Willis*, 2006 VT 101, ¶ 12, 180 Vt. 615, 910 A.2d 908 (mem.) (observing that trial court's admission of expert's deposition testimony would not be disturbed "unless that decision was an abuse of discretion resulting in prejudice to plaintiff's substantial rights" (internal quotation omitted)). See also V.R.C.P. 61 ("No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice."); V.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").[2]

¶ 10. On this record, it is clear that plaintiffs' substantial rights were prejudiced and that refusing to grant the motion for new trial was inconsistent with substantial justice. Dr. Rabinowitz's testimony was the linchpin of the Retreat's defense. Plaintiffs' expert testified that the Retreat's treatment of plaintiffs' son fell below the necessary standard of care insofar as the Retreat never

---

[2] The dissent asserts that we are applying "the extraordinarily demanding criminal standard of harmless error beyond a reasonable doubt." *Post*, ¶ 20. We are not applying that standard, as the preceding citations to civil authority make clear.

developed an individualized treatment plan for plaintiffs'. son, failed to follow standard de-escalation techniques, and failed to monitor him properly after he had been sedated. Dr. Rabinowitz was the only defense witness to rebut this claim or to testify directly about the standard of care.

¶ 11. The bulk of the remaining testimony — by plaintiffs and various staff members at the Retreat — concerned only the events leading up to and following the alleged malpractice. The only testimony on the standard of care was given by the two expert witnesses. If the deposition testimony of defendant's expert had not been allowed, defendant would have been left with only the testimony it was able to elicit from plaintiffs' expert on cross-examination. Although defendant was able to suggest that plaintiffs' expert had not clearly answered some questions and had changed his testimony in answering others, we cannot conclude that, standing alone, the cross-examination took the place of necessary rebuttal testimony about the relevant standard of care. Because the deposition testimony was the only responsive evidence offered by defendant on the crucial question in the case, the wrongful admission of that evidence was not harmless, and the judgment in favor of the Retreat must be vacated. See *Duto*, 158 Vt. at 654, 609 A.2d at 989 (vacating judgment based on improperly admitted deposition testimony).

¶ 12. In closing, we respond briefly to the cases cited by the dissent in support of the proposition that the error here was harmless. In the first, *Allgeier v. United States*, the United States Court of Appeals for the Sixth Circuit concluded that the admission of a doctor's deposition was harmless in light of the fact that the doctor's testimony was largely cumulative with what could have been elicited from other witnesses, including the plaintiff himself. 909 F.2d 869, 876 (6th Cir. 1990). That is not the case here, where Dr. Rabinowitz's deposition was the sole evidence offered by defendant on a central issue. Similarly, a federal district court, in *Thomas ex rel. Smith v. Sheahan*, concluded that there was no prejudice precisely because the disputed deposition testimony "was cumulative of the other evidence presented." 556 F. Supp. 2d 861, 876 (N.D. Ill. 2008) (noting that the disputed testimony duplicated that of plaintiff's two cellmates, three other detainees, the plaintiff's family and friends, and multiple meningitis experts). Last, the Mississippi Supreme Court found harmless error in *Mutual Life Insurance Co. v. Estate of Wesson*

because the party asserting the error "did not inform or indicate to this Court any benefit it would have received from [the deponent's] presence, nor [did it] state how it was prejudiced by the use of the deposition." 517 So. 2d 521, 538 (Miss. 1987), *overruled on other grounds by Gen. Am. Life Ins. Co. v. McCraw*, 963 So. 2d 1111, 1114 (Miss. 2007). Further, the court noted, the party asserting prejudicial error had itself initiated the taking of the disputed deposition. *Id.* Neither circumstance is present here, and the decision is inapposite.

¶ 13. The dissent concludes that the error here was harmless in part because plaintiffs did not "decline the invitation to attend the so-called preservation deposition, or pass on the opportunity to vigorously cross-examine the deponent." *Post,* ¶ 21. While the dissent is certainly correct that such inaction would very likely have made the trial court's error more harmful, that is precisely why plaintiffs' attorney could not, consistent with his professional obligations, decline to attend the deposition or cross-examine the expert. The dissent's suggestion that advocates must be *passive* in situations like this would place attorneys — bound to represent their clients' interests zealously — in an odd ethical dilemma. The rules do not require such a strange result.

¶ 14. Plaintiffs also contend that the court erred in denying a motion for mistrial and a subsequent motion for new trial premised on defense counsel's allegedly prejudicial conduct during cross-examination of plaintiffs' expert witness and closing argument. Because we vacate the judgment on the grounds noted above, we need not consider this claim of error.

*The judgment is vacated, and the matter is remanded.*

¶ 15. **Burgess, J.**, dissenting. The trial court did err in failing to find Dr. Rabinowitz unavailable for trial, and thus the introduction of his deposition into evidence failed to satisfy part of the procedural rule governing admission of prior testimony. See V.R.E. 804(b)(1) (allowing admission of a deposition "if the declarant is unavailable as a witness" provided that the adverse party had an opportunity and motive to develop that testimony by cross-examination). I disagree, however, with the majority's reasoning that this amounted to more than harmless error. In practical terms, the error resulted in no prejudice in fact. The majority essentially adopts a policy of automatic reversal for procedural noncompliance regardless of actual prejudice at trial.

Such a wooden enforcement of our rule calling for in-person witness testimony corrects no injustice to the plaintiffs in this case, and ignores our other rules expressly providing that erroneous evidentiary rulings do not require reversal where the error affects no substantial right of the litigant.

¶ 16. As the majority observes, it is settled that error in the admission of evidence will not overturn a verdict absent a showing that it resulted in prejudice to the substantial rights of a party. See *Boehm v. Willis*, 2006 VT 101, ¶ 12, 180 Vt. 615, 910 A.2d 908 (mem.) (observing that trial court's admission of expert's deposition testimony would not be disturbed "unless that decision was an abuse of discretion resulting in prejudice to plaintiff's substantial rights") (quotation omitted); V.R.C.P. 61 ("No error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice."); V.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

¶ 17. Applying this standard, it is evident from the record that the absence of Dr. Rabinowitz's physical appearance in court impaired no substantial right and caused no substantial injustice to plaintiffs. While the erroneous admission of critical out-of-court testimony could in some instances be prejudicial, such a conclusion is not warranted here for several reasons. First, as noted by the trial court, the deposition at issue was specifically noticed and conducted as a "preservation" deposition where objections could be interposed for ruling at trial. The doctor's preserved testimony was videotaped, so that his tone and demeanor on direct and cross-examination could be observed. This was preceded by plaintiffs' initial discovery deposition when the nature and scope of Dr. Rabinowitz's opinion and the basis therefore could be known in advance of the preservation deposition. Thus, the circumstances underlying the second deposition were significantly different from the typical discovery deposition, where counsel would normally not be prepared or expected to conduct an adequate cross-examination on matters of which counsel had only first gained knowledge.

¶ 18. Plaintiffs were therefore prepared to vigorously cross-examine the expert at the second deposition, and the record shows that this is precisely what occurred. Indeed, as the trial court found, plaintiffs enjoyed ample opportunity to cross-examine Dr.

Rabinowitz during the so-called preservation deposition and used that opportunity "to their satisfaction," a finding that plaintiffs do not dispute. Thus, despite the absence of a finding that the witness was unavailable, the other fundamental precondition for admission of the deposition was satisfied since plaintiffs unquestionably "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." V.R.E. 804(b)(1).

¶ 19. Nor is there any other basis to conclude that plaintiffs were actually prejudiced by the trial court's ruling. There is no reason to assume that the jury here was unable, by viewing the videotape, to observe and evaluate the witness's demeanor and credibility. See *State v. Cameron*, 168 Vt. 421, 427, 729 A.2d 493, 498 (1998) (finding no lack of confrontation in otherwise admissible video testimony of child complainant when defendant failed to "explain why the jury was less able to judge the credibility of the children [witnesses] through their videotaped trial testimony"); *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (rejecting confrontation-clause claim where jury had the "opportunity to assess the witnesses' demeanor by watching the [deposition] videotape"). Assuming, as argued by plaintiffs, that the introduction of pretrial testimony may not allow for cross-examination in the context of other evidence developed during the trial, plaintiffs describe no context arising from the evidence in this trial where any potential cross-examination was frustrated by the trial court's error. Plaintiffs made no such proffer below. Absent a showing as to how plaintiffs were specifically prejudiced by the ruling in the evidentiary context of this case, there is no basis to find a deprivation of substantial rights or justice, and hence no grounds under V.R.E. 103(a) or V.R.C.P. 61 to disturb the judgment.

¶ 20. This is not a criminal case where a party-defendant's procedural and evidentiary right to insist on trial testimony in person serves a Sixth Amendment constitutional right to confront the witnesses against him. In such cases, the State must, on appeal, demonstrate that the same guilty verdict would have been obtained beyond a reasonable doubt absent the inadmissible evidence. See *State v. Lynds*, 158 Vt. 37, 42, 605 A.2d 501, 503 (1991) (determining whether the erroneous introduction of an inadmissible deposition was harmless where the criminal defendant was deprived of his constitutional right to cross-examine the witness requires positing a trial without any of the inadmissible

testimony). Here there was neither a violation of any constitutional right of plaintiffs to confront Dr. Rabinowitz, nor any deprivation of plaintiffs' procedural rights to cross-examine defendant's expert and to have the jury observe the performance of the witness. Absent a criminal prosecution or such a constitutional violation, there is no reason for the majority's application of the extraordinarily demanding criminal standard of harmless error beyond a reasonable doubt in this review of a civil judgment, particularly when the rules provide otherwise.

¶ 21. Instead, in this civil appeal, it is incumbent for the challenging party to show that the erroneously admitted evidence actually resulted "in prejudice to plaintiff's substantial rights." *Boehm*, 2006 VT 101, ¶ 12 (quotation omitted). The undisputed facts here show no such prejudice. The second deposition was noticed and taken for the specific purpose of admission at trial, and the opposing party was afforded ample opportunity to cross-examine the witness with that expectation in mind. Although not acceding to the unavailability of the expert, neither did plaintiffs decline the invitation to attend the so-called preservation deposition, or pass on the opportunity to vigorously cross-examine the deponent. The witness's performance was observed by the jury.

¶ 22. Under such circumstances, the error in failing to find the witness unavailable was harmless. Other courts agree. In *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990), the trial court erred in finding that a physician witness was unavailable, but admission of his deposition testimony was harmless error where the other party "had ample opportunity to and did cross-examine [the witness] at his deposition." Similarly, the court in *Thomas ex rel. Smith v. Sheahan*, 556 F. Supp. 2d 861, 876 (N.D. Ill. 2008), found that any error in allowing an absent witness's deposition to be read to the jury was harmless since "the jury heard the extensive cross-examination of [the witness] during his deposition." In accord is *Mutual Life Insurance Co. of New York v. Estate of Wesson*, 517 So. 2d 521, 538 (Miss. 1987), which held that the trial court's failure to find that the defendant had diligently attempted to procure a witness before allowing his deposition into evidence was harmless error where the plaintiff had not shown "how it was prejudiced by the use of the deposition" and plaintiff had "questioned [the witness] extensively" at the deposition.

¶ 23. The majority is mistaken in characterizing such errors as tolerated only because the evidence was cumulative. The cases do

not so hold. Explicit in *Thomas ex rel. Smith* is that, *regardless* of other evidence on the same point, "where the jury heard the extensive cross-examinations of [the deposed witness] Defendants have not shown that they were prejudiced by the admission of [the witness's] deposition testimony." 556 F. Supp. 2d at 876. There was no so-called cumulative evidence to consider in *Allgeier*, where the court found that appellants enjoyed "ample opportunity" to cross-examine the deponent and, as here, failed to show any opportunities missed due to the witness's absence. 909 F.2d at 876-77. Likewise, there was no cumulative evidence at play in the finding of harmless error in *Mutual Life.* 517 So. 2d at 537.

¶ 24. The cases referred to by the majority are inapposite. The State's verdict was reversed in *Lynds* because the erroneous admission of a deposition violated that criminal defendant's constitutional right to confrontation and cross-examination. 158 Vt. at 40-41, 605 A.2d at 503. As noted above, neither issue is present in this case. Although judgment for the plaintiff was reversed in *Duto v. Mitchell* based on the trial court's erroneous admission of her expert's deposition, 158 Vt. 653, 654, 609 A.2d 988, 989 (1992) (mem.), that opinion did not address the arguments raised here: (1) that such error was harmless given a full opportunity for cross-examination of the expert in full view of the jury; and (2) that the rules foreclose a claim of evidentiary error "unless a substantial right of the party is affected," V.R.E. 103(a), and preclude setting aside a verdict where the moving party fails to show that denial of the motion is "inconsistent with substantial justice." V.R.C.P. 61.

¶ 25. The majority's justification of reversal by the command that witness testimony generally "shall be taken orally in open court" pursuant to V.R.C.P. 43(a), alone and without regard to prejudice, divorces the rule from its purpose. As explained in *Simpson v. Rood*, the mandate of Rule 43(a) is intended to confirm "our confidence in the adversary system," wherein "experience has taught us that testimonial evidence has the highest reliability because the credibility of the witness can be evaluated, and the factual issues narrowed by cross-examination." 2003 VT 39, ¶ 12, 175 Vt. 546, 830 A.2d 4 (mem.) (quotations omitted). In *Simpson*, we reversed a defendant's verdict because admission of critical testimony from defendant's expert by telephone violated the rule's requirement that testimony be presented "orally in open court" where, although subject to cross-examination, the witness

was "out of sight of the jury." *Id.* ¶ 8 (noting that to be "present in the courtroom" under Rule 43(a) the witness "must be present in court so that the trier of fact may observe the demeanor of the witness") (quotation omitted). Thus, while the expert's testimony was tested by cross-examination, we were concerned that the trial court's sidestepping of the personal appearance requirement would "result[] in the complete disconnection of witnesses from the jury charged not only with hearing trial testimony, but with *observing* it as well." *Id.* ¶ 10.

¶ 26. In contrast, the witness in this case was subject not only to cross-examination, but *also* to the jury's observation by video presentation "in court," so that the jury could evaluate credibility as contemplated by Rule 43(a) and *Simpson.* Per the goals of Rule 43(a) as outlined in *Simpson,* all "substantial" justice and rights due to plaintiffs by the evidence were satisfied, despite the trial court's technical error. Other than the fact of the mistake itself, plaintiffs point to no loss or deprivation of any substantial opportunity or advantage to which they were entitled under Rule 43(a). Indeed, applying the substantial prejudice standards of V.R.E. 103(a) and V.R.C.P. 61, plaintiffs' arguments amount to nothing beyond the well established and accepted maxim of referees: "no harm, no foul." Accordingly, the error was harmless, and does not warrant reversal of the judgment.

¶ 27. I am authorized to state that Associate Justice Skoglund joins in this dissent.